**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

DORRELL BLAKE,

*Defendant*.

Crim. No. 19-801

**OPINION & ORDER**

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of Defendant Dorrell Blake's motion to modify his sentence and for immediate compassionate release. D.E. 254, 255 ("Br."). The Government filed opposition, D.E. 271 (Opp."), to which Defendant replied, D.E. 270 ("Reply"). Defendant also filed a supplemental brief, D.E. 272 ("Supp.").[1] The Court reviewed the parties' submissions and considered the motions without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). Defendant seeks immediate release due to the ongoing COVID-19 pandemic. For the following reasons, Defendant's motion for compassionate release is denied, as is his motion for appointment of counsel.

## I. BACKGROUND

### A. Underlying Criminal Proceedings

On November 6, 2019, Blake pled guilty to a one-count Information, charging him a conspiracy to distribute heroin and cocaine base in violation of 21 U.S.C. § 846. D.E. 244, 246.

[1] Defendant filed his original brief *pro se*, while counsel submitted Defendant's reply and supplemental brief.

Blake did so pursuant to a written plea agreement in which the parties stipulated that a 7-year sentence was reasonable. D.E. 248. Blake was part of a large-scale, long-running, open-air drug distribution organization in Newark, New Jersey. The organization had a clear hierarchy, with Blake falling in the middle of the organization. His duties included bringing narcotics to the relevant house for distribution, ferrying proceeds back to the leaders of the group, and engaging in hand-to-hand transactions.

The Court then sentenced Defendant on July 14, 2020. D.E. 251. Blake's range under the United States Sentencing Guidelines was 100 to 125 months, resulting from a level 27 and a criminal history category of 4. D.E. 265 at 8. The Court sentenced Defendant consistent with the parties' plea agreement, that is, to a term of imprisonment for 7 years and supervised release for 5 years. D.E. 253.

Blake is currently housed at FCI Schuylkill in Pennsylvania. He is scheduled to be released on June 3, 2025.

**B. COVID-19 Pandemic**

COVID-19 "is caused by the virus severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), a new virus in humans causing respiratory illness which can be spread from person-to-person." *COVID-19*, "COVID-19 Overview and Infection Prevention and Control Priorities in non-US Healthcare Settings," Centers for Disease Control and Prevention (Feb. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/non-us-settings/overview/index.html #background. "COVID-19 is primarily transmitted from person-to-person through respiratory droplets. These droplets are released when someone with COVID-19 sneezes, coughs, or talks." *Id.* Persons who contract the virus reflect a wide range of symptoms from asymptomatic to mild (including fever, cough, nausea, chest pain, and body pain) to severe to critical (including

respiratory failure and death). *Id.* As a result, standard precautions to prevent the spread of the virus include social distancing, proper hygiene, personal protective equipment (including use of a face mask), and maintenance of clean surfaces and devices. *Id.*

Numerous factors can increase a person's risk of severe illness if he/she contracts the virus. As a person get older, his/her risk for severe illness from COVID-19 increases. *COVID-19*, "Older Adults," Centers for Disease Control and Prevention (May 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. For example, persons in their sixties and seventies are at a higher risk of severe illness than people in their fifties. *Id.* Those 85 or older are at greatest risk. *Id.* Adults 65 or older comprise 8 out of 10 COVID-19 deaths in the United States. *Id.* The following medical conditions put a person at increased risk of severe illness from COVID-19: cancer, chronic kidney diseases, chronic liver diseases, chronic lung diseases (including asthma if it is moderate to severe), cystic fibrosis, dementia or other neurological conditions, diabetes, certain disabilities, HIV infection, immunocompromised state, certain mental health conditions, obesity, pregnancy, physical inactivity, sickle cell disease, smoking, solid organ or blood stem cell transplant, stroke or cerebrovascular disease, substance use disorders, and tuberculosis. *COVID-19*, "People with Certain Medical Conditions," Centers for Disease Control and Prevention (last update Feb. 25, 2022),[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

As of April 18, 2022, the United States has had 80,476,479 COVID-19 cases, resulting in 986,123 deaths. *COVID Data Tracker*, Centers for Disease Control and Prevention,

---

[2] The CDC previously provided two separate lists, one listing conditions that entailed a greater risk of severe illness and one setting forth conditions that might involve a greater risk.

https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited April 18, 2022).

**C. Federal Bureau of Prisons**

The Federal Bureau of Prisons ("BOP") has taken the following steps to combat the virus. On March 13, 2020, the BOP modified its operations in accordance with its "COVID-19 Action Plan." *Federal Bureau of Prisons COVID-19 Action Plan*, Federal Bureau of Prisons (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp. Initially, all social visits, inmate movement, and official staff travel were suspended for thirty days. *Id.* Contractors who enter any BOP facility are screened for the virus and, initially, admission was limited to contractors who performed essential services. *Id.* The BOP also conducts enhanced health screenings for staff in areas of "sustained community transmission." *Id.* The BOP screens all new inmates for virus "exposure risk factors and symptoms." *Id.* Any new inmate who is asymptomatic but has had a risk of exposure is quarantined. *Id.* According to the Government, the quarantine period is for a minimum of 14 days or until cleared by medical staff. Opp. at 4. The Government indicates that new inmates who are symptomatic are placed in isolation until they test negative for the virus or are cleared by medical staff. *Id.* at 5. The Government also states that the BOP has taken the following steps to prevent the spread of the virus: group gatherings are limited to permit social distancing as much as possible, all staff and inmates have been issued face masks, and all staff and inmates are strongly encouraged to wear face masks when social distancing cannot be achieved. *Id.*

The BOP also has a COVID-19 vaccination plan. *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Mar. 11, 2021), https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. Inmates fall into

different priority levels for vaccination: Priority Level 1 (for inmates in certain high priority jobs, including health service unit assignments); Priority Level 2 (inmates who are 65 or older or who are, according to CDC criteria, at an increased risk for severe illness from the virus); Priority Level 3 (inmates who are aged 50 through 64 or who might be, according to CDC criteria, at an increased risk for severe illness from the virus); and Priority Level 4 (all other inmates). *Id.* As of April 18, 2022, the BOP had administered 312,407 doses of vaccine. *COVID-19*, "Vaccine Implementation," Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited April 18, 2022).

The BOP COVID-19 current statistics are as follows: (1) 54 inmates and 148 staff presently have confirmed positive tests; (2) 52,880 inmates and 12,557 staff have recovered; and (3) 293 inmates and 7 staff have died. *Id.* FCI Schuylkill, where Defendant is housed, currently reports 0 inmate and 3 staff cases. *Id.* In addition, 513 inmates and 73 staff have recovered, and there have been no deaths. *Id.*

**D. The Parties' Arguments**

Blake filed the current motion a little more than a month after he was sentenced and before he was transferred to a BOP facility. Br. at 4. Blake asserts in his extensive filing that he should be released due to the pandemic. *Id.* at 2-3. Despite the length of Blake's submission, he does not spend much time on his personal circumstances. Defendant does, however, argue that he should be released due to his severe obesity, childhood asthma, and mental health issues. *Id.* at 16.

In opposition, the Government refers to Blake's medical records from the BOP. Opp. at 3 (citing to Defendant's medical records). The Government indicates that Blake is currently on medication for a singular depressive episode and that he is considered to be "prediabetes." *Id.* And, the Government notes, during his most recent medical examination, Blake did not have any

complaints as to his physical or mental health. *Id.* The Government continues that Blake tested positive for the coronavirus on January 9, 2021, his case was not severe, and he recovered without issue. *Id.* The Government continues that Blake is also vaccinated, having received his second dose on June 28, 2021. *Id.*

In his reply, Blake changes tact somewhat and points to the time that he served in jail during the pandemic before (and shortly after) he was sentenced. Reply at 6.

On July 28, 2021, Blake wrote to the Warden of FCI Ray Brook (where he was housed at the time), seeking release to home confinement pursuant to Section 12003(b)(2) of the Cares Act. Br. at Ex. A. The Warden denied the request on August 2, 2021. D.E. 270 at 6. The Government points out that this request was insufficient to exhaust Blake's administrative remedies for the release he is now seeking. Opp. At 9. Counsel for Defendant indicates that on April 8, 2022, Blake sought compassionate release from Warden at FCI Schuylkill. D.E. 272.

## II. LEGAL STANDARD

Following the passage of the First Step Act, Section 3582(c)(1)(A) now reads as follows:

> (c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable*, if it finds that—
>
> (i) *extraordinary and compelling reasons warrant such a reduction*; or

> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and *a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)*;
> >
> > *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and
>
> > (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and
>
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphases added).

The applicable policy statement of the United States Sentencing Commission is found in Section 1B1.13. U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) ("U.S. Sentencing Guidelines Manual"). The application notes to the section provide four circumstances that can be considered extraordinary and compelling: (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, and (4) other circumstances constituting an extraordinary or compelling reason, either considered alone or in combination with any of the other three stated reasons. *Id.* cmt. n. 1(A)-(D). In *United States v. Andrews*, 12 F.4th 255, 259-60 (3d Cir. 2021), the Third Circuit found that the policy statement was not binding on courts but nevertheless found that the statement could provide useful guidance.

Pursuant to Section 3582(c)(1)(A), the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a). They include the nature and circumstances of Defendant's offense, the

history and characteristics of Defendant, the need for the sentence to provide just punishment, and the need to protect the public from future offenses by Defendant. *Id.*

## III. ANALYSIS

The Court agrees that Blake has not successfully exhausted his administrative remedies as to the relief he is currently seeking. Yet, in light of the fact that Blake has since submitted an appropriate request, the Court nevertheless addresses the merits of Blake's motion. Turning first to Blake's arguments concerning the pandemic, his obesity potentially increases his risk of suffering an adverse outcome should he contract the virus. This factor weighs in favor of Defendant's request.

However, the Court finds that Defendant has not met his burden as to extraordinary and compelling circumstance for the following reasons. First, Blake's pre-diabetic condition is not listed as an increased risk factor by the CDC. Second, Blake's mental health issue is limited to a single episode for which he is receiving treatment. Third, Blake's most recent medical evaluation reflected that he did not have any complaints. Fourth, Blake unfortunately was infected with COVID-19 but recovered without issue. Fifth, Blake has also been vaccinated following his recovery. Sixth, as to the presentencing conditions in the jail, Blake raised the issue during his sentencing, *see, e.g.*, D.E. 265 at 14, and the Court did grant the variance for that reason. Finally, FCI Schuylkill currently does not have any inmates who are positive.

The Court also agrees with the Government that the Section 3553(a) factors militate against release. Blake filed the current motion from jail several weeks after the Court sentenced him. Thus, the Court's Section 3553(a) analysis from his sentencing is unquestionably applicable. The nature and circumstances of the offense were "very serious[,]" and Blake played "an important role" in the drug distribution organization. D.E. 265 at 17.

.

## IV. CONCLUSION

For the foregoing reasons, and for good cause shown,

It is on this 19th day of April 2022 hereby

**ORDERED** that Defendant's motion for compassionate release, D.E. 254, is **DENIED**; and it is further

**ORDERED** that the Clerk's Office shall mail a copy of this Opinion and Order to Defendant by regular mail.

John Michael Vazquez, U.S.D.J.